UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RITA MAUDE VOCK,                                    Case No. 13-12753

        Plaintiff,                              Gershwin A. Drain
v.                                                  United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                    Michael Hluchaniuk
                                                    United States Magistrate Judge
        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 13)**

## I.     PROCEDURAL HISTORY

### A.     Proceedings in this Court

On June 21, 2013, plaintiff Rita Maude Vock filed the instant suit seeking

judicial review of the Commissioner's unfavorable decision disallowing benefits.

(Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge Gershwin A. Drain referred this matter to the undersigned for the purpose of

reviewing the Commissioner's decision denying plaintiff's claims for disability

insurance benefits and supplemental security income.  (Dkt. 2).  This matter is

before the Court on cross-motions for summary judgment.  (Dkt. 10, 13).  Plaintiff

also filed a reply brief in support of her motion.  (Dkt. 14).

**B.     Administrative Proceedings**

Plaintiff filed the instant claims for disability insurance benefits (DIB) and for supplemental security income (SSI) on June 8, 2010, alleging that she became disabled beginning June 8, 1980, shortly after she turned 18 years old.  (Dkt. 8-5, Pg ID 230-33, 237-40).  The claims were initially disapproved by the Commissioner on October 21, 2010.  (Dkt. 8-3, Pg ID 151-52).  On January 10, 2010, plaintiff requested a hearing before an Administrative Law Judge (Dkt. 8-4, Pg ID 164-66), and by letter dated September 26, 2011, plaintiff withdrew her application for DIB benefits and requested a hearing solely on her SSI claim.  (Dkt. 8-6, Pg ID 306-08).  On September 29, 2011, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Richard L. Sasena, who considered the case de novo.  (Dkt. 8-2, Pg ID 89-114).  In a decision dated February 8, 2012, the ALJ found that plaintiff was not disabled.  (Dkt. 8-2, Pg ID 69-84).  Plaintiff requested a review of this decision on February 27, 2012.  (Dkt. 8-2, Pg ID 67-68). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council, on June 17, 2013, denied

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Secs.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of

plaintiff's request for review.  (Dkt. 8-2, Pg ID 41-44[2]); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this case be **REMANDED** under Sentence Four.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1961 and was 18 years of age on the alleged disability onset date and 49 years old on the date of the hearing.  (Dkt. 8-3, Pg ID 131). Plaintiff had past relevant work experience as a presser and cashier.  (Dkt. 8-2, Pg ID 82, 305).  The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (Dkt. 8-2, Pg ID 74)  At step two, the ALJ found that plaintiff's history of back pain, adjustment disorder, panic disorder and polysubstance disorder were "severe" within the meaning of the second sequential

_____

substantial evidence review.

[2] The Appeals Council initially denied plaintiff's request for review on April 22, 2013 (Dkt. 8-2, Pg ID 47-51), but subsequently set aside that decision to consider additional information provided by plaintiff; namely, a brief by plaintiff's attorney that was erroneously not associated with plaintiff's file until after the April 22, 2013 action.  (Dkt. 8-2, Pg ID 41).  After considering the additional information, the Appeals Council again denied plaintiff's request for review, meaning that the ALJ's decision remains the final decision of the Commissioner.  (*Id.*).

3

step.  (Dkt. 8-2, Pg ID 74-75).  At step three, the ALJ found no evidence that

plaintiff's combination of impairments met or equaled one of the listings in the

regulations.  (Dkt. 8-2, Pg ID 75-76).

The ALJ determined that plaintiff has the following residual functional

capacity ("RFC"):

> [T]o perform light work as defined in 20 CFR
> 404.1567(b) and 416.967(b) except she needs a sit/stand
> option after thirty minutes.  She can occasionally climb,
> balance, stoop, kneel, crouch and crawl.  She can perform
> simple, repetitive tasks that requires little judgment and
> can be learned in [a] short period of time. She can have
> no interaction with the public and occasional interaction
> with coworkers.

(Dkt. 8-2, Pg ID 76-83).  At step four, the ALJ found that plaintiff was unable to

perform her past relevant work because the demands of that past relevant work

exceed the RFC.  (Dkt. 8-2, Pg ID 82).  At step five, the ALJ denied plaintiff

benefits because she could perform a significant number of jobs available in the

national economy.  (Dkt. 8-2, Pg ID 82-83).

### B.    Plaintiff's Claims of Error

Plaintiff alleges four claims of error: (1) the ALJ erred in finding that

plaintiff did not meet or equal Listing 12.04; (2) the ALJ failed to follow the

treating physician rule; (3) the ALJ failed to properly evaluate plaintiff's

credibility; and (4) the ALJ relied on flawed vocational expert testimony.  First,

plaintiff argues that the ALJ erred in finding that plaintiff did not meet or equal

Listing 12.04.  According to plaintiff, the ALJ found that under the "paragraph B" criteria plaintiff had only moderate difficulties in social functioning and moderate difficulties in concentration, persistence, or pace.  (Tr. 35).  Plaintiff argues, however, that the ALJ failed to cite to any medical evidence to support his findings at step three, and contends that the ALJ's findings are directly contradicted by the opinions from plaintiff's treating psychiatrist, Dr. Dosyng Yoon, M.D., who opined that plaintiff has marked limitations in the majority of mental functions requiring concentration, persistence, or pace and social functioning.  (Tr. 450-51). Plaintiff argues that the ALJ was not permitted to simply ignore these findings at step three and not cite to anything to contradict Dr. Yoon's findings.  Plaintiff further argues that the ALJ also failed to discuss the "A" criteria of the Listing. Plaintiff continues, however, that it is clear that those criteria are also met based on findings from Dr. Yoon.  (Tr. 448).

Second, plaintiff argues that the ALJ failed to follow the treating physician rule, which generally requires that a treating source's opinion must be given controlling weight if it is well-supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the case record.  Plaintiff argues that the ALJ here states that he gave "some weight" to the opinions from treating psychiatrist Dr. Yoon.  (Tr. 41).  According to plaintiff, the ALJ found Dr. Yoon's opinions inconsistent with evidence that plaintiff was not

5

psychiatrically hospitalized during the period at issue and her GAF scores of 59.
*Id.* Plaintiff contends, however, that the ALJ does not dispute that Dr. Yoon's
opinions are based on appropriate psychiatric findings. According to plaintiff, Dr.
Yoon stated that plaintiff presented with evidence of sleep disturbances, mood
disturbance, emotional lability, recurrent panic attacks, difficulty thinking or
concentrating, tearfulness, and a sad mood. (Tr. 448-49). Therefore, plaintiff
argues, the treating doctor's opinions are based on appropriate clinical and
diagnostic medical evidence.

Plaintiff further argues that Dr. Yoon's opinions are not inconsistent with
other substantial evidence. Plaintiff contends that the fact that she was not
institutionalized does not mean she is not psychiatrically disabled. *Cf. Adkins v.
Astrue,* 2010 WL 3782388, at *9 (N.D. Ind. Sept. 21, 2010) ("Because there is no
evidence in the record that severe mental impairments necessarily (or even
generally) result in hospitalization, and that conclusion seems untenable, this Court
concurs with [plaintiff] that his lack of hospitalization was not a proper basis for
discrediting his testimony regarding his symptoms"). Plaintiff further argues that
the GAF scores are not equivalent with any particular level of functioning under
the Commissioner's Regulations. *See* 65 Fed. Reg. 50746, 50764-65 (Aug. 21,
2000) (noting that a claimant's GAF score is not considered to have a "direct
correlation to the severity requirements"); *see also Kennedy v. Astrue*, 247 Fed.

Appx. 761, 766 (6th Cir. 2007) ("the Commissioner has declined to endorse the GAF score for use in the Social Security and SSI disability programs...."). Plaintiff argues, furthermore, that the DSM-5 no longer uses GAF scores as a diagnostic tool for assessing a patient's functioning because of the GAF scale's conceptual lack of clarity and "questionable psychometrics in routine practice." (DSM-5, p. 16). Plaintiff thus concludes that the opinions from Dr. Yoon are based on extensive psychiatric abnormalities and confirmed by the only other medical source who examined plaintiff, the consultative psychologist, Pamela Herringshaw, Ph.D. Plaintiff concludes, therefore, that Dr. Yoon's findings should have been given controlling weight.

Plaintiff continues, however, that even if the ALJ was not required to give the opinions from Dr. Yoon controlling weight, SSR 96-2p states that "[t]reating source medical opinions are still entitled to deference and *must* be weighed using all of the factors provided in 20 CFR §§ 404.1527, 416.927." According to plaintiff, in many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight, and plaintiff asserts that is the case here. First, Dr. Yoon has treated plaintiff regularly throughout the period at issue. Second, the nature of the treatment was focused on plaintiff's psychiatric impairments. Third, Dr. Yoon supported the limitations found by referencing appropriate medical findings.

Plaintiff contends that these findings are consistent with the record as a whole, including the opinion from the Social Security Administration's own psychologist. (Tr. 309).  Finally, Dr. Yoon is a psychiatrist.

Plaintiff further argues that rather than giving any weight to the treating specialist, the ALJ states that he gave "some weight" to the opinions from the consulting examining psychologist Dr. Herringshaw and found her report consistent with plaintiff's RFC.  (Tr. 39).  Plaintiff argues, however, that Dr. Herringshaw actually opined that plaintiff was "unable to sustain appropriate emotional stability to sustain full time or part time employment."  (Tr. 309). Plaintiff argues that this finding is not consistent with the RFC determined by the ALJ that plaintiff can perform some simple repetitive work.  Therefore, plaintiff concludes, remand is also required to give further consideration to this opinion. Plaintiff argues that the ALJ here did not cite to any specific medical facts or nonmedical evidence that support the limitations found for plaintiff, and the ALJ was not permitted to make a determination of plaintiff's functioning based on his own lay interpretation of the record.  *See Meece v. Barnhart,* 192 Fed. Appx. 456, 465 (6th Cir. 2006) (ALJ cannot substitute his opinion of the record for plaintiff's treating physician).  Plaintiff asserts that an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by

8

substantial evidence.

Third, plaintiff argues that the ALJ failed to properly evaluate her credibility. According to plaintiff, the ALJ here conceded that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but found her statements concerning the intensity, persistence, and limiting effects of her symptoms were "not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 37). The ALJ noted that plaintiff engaged in activities of vacuuming, dusting, doing laundry, cooking simple meals, going grocery shopping, interacting with friends and family, reading, and watching TV, and also noted that plaintiff's medication helped her symptoms. (Tr. 41-42). Plaintiff contends, as an initial matter, that the ALJ applied the wrong legal standard in evaluating plaintiff's credibility because the Regulations instruct the ALJ to evaluate the consistency of a claimant's statements not against the adjudicators own RFC, as the ALJ did here, but rather with the evidence of record. Plaintiff contends that several courts in this District have criticized this language as nothing more than boilerplate that fails to provide a sufficient explanation for why the claimant was found not credible, which requires remand. *See Tell v. Comm'r of Soc. Sec.*, 2012 WL 3679138, at *10 (E.D. Mich. July 13, 2012), *adopted by* 2012 WL 3542473 (E.D. Mich. Aug. 16, 2012). Plaintiff argues that, to the limited extent the ALJ suggests he did consider the

9

record despite use of the boilerplate language, his findings were insufficient to find
plaintiff not credible.  The ALJ found it significant that plaintiff engaged in
activities of vacuuming, dusting, doing laundry, cooking simple meals, going
grocery shopping, interacting with friends and family, reading, and watching TV
(Tr. 41), but plaintiff argues that it is unclear how these activities establish the
mental capacity to work a full-time job on a sustained basis.  Plaintiff contends that
the ALJ also noted that plaintiff's medication helped her symptoms (Tr. 42), but
argues that the ALJ fails to cite to any evidence establishing that plaintiff's
response to medication was significant or sustained.  In fact, plaintiff continues, the
record shows the opposite. Therefore, plaintiff concludes, the ALJ failed to provide
good reasons for finding plaintiff's testimony not credible.  According to plaintiff,
she gave detailed testimony on her symptoms and limitations, her limited activities
of daily living, and her lack of significant response to treatment, and the ALJ did
not provide any meaningful comparison of plaintiff's testimony on these factors
against the underlying record as required by SSR 96-7p.

Finally, plaintiff argues that the ALJ relied on flawed vocational expert
testimony.  Plaintiff asserts that the ALJ conceded that plaintiff's RFC precluded
her from performing her past relevant work, but found she could perform other
work as a small products assembler and a sorter/checker based on the vocational
expert's testimony.  (Tr. 42-43).  Plaintiff argues, however, as was detailed *supra*,

10

the ALJ's RFC is not based on substantial evidence.  In fact, plaintiff contends, it is not based on anything more than his lay interpretation of the treatment record, and thus the Commissioner cannot meet her burden of proof at step five by relying on testimony from the vocational expert in response to the unsupported mental RFC finding.  Plaintiff also argues that the ALJ also failed to present a hypothetical to the vocational expert that included even the mental limitations he conceded were documented by the record.  Plaintiff contends that the limitations in the ALJ's RFC do not adequately account for her moderate restrictions in concentration, persistence, or pace and moderate limitations in social functioning.  Plaintiff concludes, therefore, that the ALJ's accepted hypothetical is fatally flawed.

Plaintiff therefore requests that the decision of the Commissioner be reversed and remanded solely for a calculation of benefits, or, in the alternative, that the decision be reversed and the matter remanded for a new hearing and decision in accordance with this decision.

### C.    Commissioner's Motion for Summary Judgment

The Commissioner argues that the ALJ properly considered the "B Criteria" in assessing plaintiff's mental impairments at the third step of the sequential evaluation when the ALJ determined that plaintiff's mental impairments did not meet or equal a Listing.  (Tr. 35-36).  To satisfy the "B criteria," plaintiff must show that her mental impairments resulted in at least two of the following: marked

11

restrictions on her activities of daily living; marked difficulties in maintaining

social functioning; marked difficulties in maintaining concentration, persistence, or

pace; or repeated episodes of decompensation.  *See* 20 C.F.R., Pt. 404, Subpt. P, §

12.00.  The ALJ here concluded that plaintiff had mild restrictions on her activities

of daily living and moderate limitations on her social functioning and

concentration, persistence, or pace.  (Tr. 35).  The ALJ also found that plaintiff had

not experienced episodes of decompensation.  (Tr. 35).  Based on those findings,

the ALJ explained that plaintiff did not show that she had the requisite limitations

in functioning to satisfy the B criteria and therefore did not meet or equal a Listing.

(Tr. 34).

According to the Commissioner, plaintiff argues that the ALJ's analysis was

deficient because he failed to adequately describe the evidence in support of his

findings.  The Commissioner argues that plaintiff is mistaken and overlooks that

the ALJ specifically addressed all four areas later in his decision.  With respect to

activities of daily living, the ALJ noted that plaintiff reported that she could

vacuum, dust, do the laundry, and cook simple meals.  (Tr. 41, 238-40).  Plaintiff

also indicated that she could go grocery shopping every two weeks for an hour (Tr.

240), and at the hearing, plaintiff testified that she could perform light

housekeeping.  (Tr. 63-64).  The Commissioner contends that although plaintiff's

physical impairments limited her ability to perform daily activities, the record does

not indicate that plaintiff's mental impairments caused any limitation on her ability to perform her daily activities.  Accordingly, the Commissioner continues, the ALJ properly found that, at most, plaintiff had only mild limitations in this area.  (Tr. 41).

The Commissioner notes that the ALJ also found that plaintiff had moderate limitations in social functioning.  (Tr. 41).  The ALJ noted that plaintiff reported that she would talk on the telephone with family and that her friend would visit her regularly.  (Tr. 241).  The Commissioner notes that although plaintiff testified that she rarely left her home, she also testified that she was planning to take a bus to visit her sister and would go out to eat with her son.  (Tr. 66, 69).  In addition, plaintiff indicated that she could get along with coworkers and supervisors.  (Tr. 304).  The Commissioner contends that although plaintiff had mood swings and crying spells, she did not show that her limitations in social functioning were greater than the ALJ found.

The Commissioner continues that, with respect to concentration, persistence, or pace, the ALJ noted that plaintiff reported that she could follow written and verbal instructions well but that she had difficulty handling stress or changes in her routine.  (Tr. 41, 242-43).  She testified that she retained the ability to concentrate to watch television or read most of the day.  (Tr. 69).  The Commissioner notes that during a psychological assessment, plaintiff was able to repeat four out of four

13

objects and recall them after five minutes, and could also perform the serial three task with good concentration.  (Tr. 316).  The Commissioner argues that, based on these findings, the ALJ reasonably declined to find that plaintiff had greater than moderate limitations.  (Tr. 41).

The Commissioner argues that finally, the ALJ explained that there was no probative evidence to indicate that plaintiff had episodes of decompensation.  (Tr. 42).  According to the Commissioner, plaintiff has not presented any evidence to dispute the ALJ's finding.  The Commissioner contends that the ALJ's decision reflects that he adequately discussed whether plaintiff satisfied the B criteria.  The Commissioner continues that although the ALJ did not provide this analysis while describing his step-three findings, "it is proper to read the ALJ's decision as a whole."  *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004).  The Sixth Circuit has noted that courts are not constrained to reviewing solely the ALJ's step three analysis in considering whether the ALJ's findings are supported by substantial evidence, and concluded in *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411 (6th Cir. 2006), that an ALJ's step three analysis was sufficient because the ALJ "described evidence pertaining to all impairments, both severe and non-severe, for five pages earlier in his opinion and made factual findings."

The Commissioner also argues that the ALJ properly assessed plaintiff's RFC.  After determining that plaintiff did not meet or equal a Listing, the ALJ was

14

charged with evaluating the medical evidence and hearing testimony to form an assessment of plaintiff's residual functional capacity.  The Commissioner acknowledges that there is no dispute that plaintiff had a long history of depression and mental impairments, which she attributed to the grief following several deaths in her family.  (Tr. 352).  Specifically, plaintiff's father committed suicide in 1975 and her brother committed suicide in 1996.  (Tr. 398).  In 1999, plaintiff's mother was killed as a passenger in a car accident when her sister was drunk driving and hit a tree.  (Tr. 398).  In 2003, plaintiff had her own difficulties when she was sentenced to prison for two years for credit card fraud.  (Tr. 353).  The ALJ also acknowledged that plaintiff used medication, sought treatment from a therapist, and met with a case manager as part of her overall treatment program.  (Tr. 37). The Commissioner contends, however, that the ALJ reasonably found that plaintiff's impairments were not disabling.  The ALJ determined that plaintiff retained the RFC to perform simple, repetitive tasks that required little judgment and could be learned in a short period of time.  (Tr. 36).  The ALJ also found that plaintiff could have no interaction with the public and only occasional interaction with coworkers.  (Tr. 36).

The Commissioner argues that, contrary to plaintiff's claim that the ALJ did not base his RFC determination on any medical evidence, the ALJ's decision reflects that he carefully considered plaintiff's testimony along with the rest of the

medical evidence, and his finding is supported by substantial evidence.  For example, the ALJ noted that plaintiff displayed largely normal findings during an October 2010 consultative psychological assessment with Pamela Herringshaw, Ph.D.  The Commissioner contends that although plaintiff complained that she had difficulty with concentration, she displayed good recent, intermediate, and past memory.  (Tr. 307).  Plaintiff could also make calculations, recall events, name five large cities, exercise judgment, and decipher similarities and differences.  (Tr. 307-08).  The Commissioner argues that although Dr. Herringshaw opined that "[b]ased upon [plaintiff's] report she is unable to sustain full time or part time employment," the psychologist admitted that she did not review any third party medical records to support plaintiff's claims.  (Tr. 309).  The Commissioner argues that because Dr. Herringshaw's opinion was based largely on plaintiff's subjective complaints of her own symptoms, the ALJ reasonably declined to give this opinion any weight.  (Tr. 39).  *See Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 156 (6th Cir. 2009) ("Here, substantial evidence supports the ALJ's determination that the opinion of Dr. Boyd, Poe's treating physician, was not entitled to deference because it was based on Poe's subjective complaints, rather than objective medical data.").  The Commissioner contends that the ALJ instead reasonably found that the assessment performed by Dr. Herringshaw indicated that plaintiff "had adequate attention and concentration to tasks and could perform at least unskilled

16

work." (Tr. 39).

According to the Commissioner, plaintiff also contends that the ALJ did not properly weigh the opinion of her treating physician, Dosyng Yoon, M.D.  Dr. Yoon indicated that he began treating plaintiff in October 2010 and scheduled quarterly medical assessments.  (Tr. 447).  In August 2011, Dr. Yoon diagnosed plaintiff with adjustment disorder with depressed mood, panic disorder with agoraphobia, and borderline personality disorder.  (Tr. 447).  Dr. Yoon opined that plaintiff had mostly marked limitations in memory and understanding, sustained concentration and persistence, social interaction, and adaptation.  (Tr. 450-52).  Dr. Yoon also indicated that plaintiff would be unable to perform even low stress jobs and would miss work more than three times per month.  (Tr. 452-53).  According to the Commissioner, Dr. Yoon's opinion is entitled to controlling weight only if it was well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record.  *See* 20 C.F.R. § 404.1527(c)(2).  The ALJ determined that Dr. Yoon's opinion was only entitled to "some weight" because it was inconsistent with plaintiff's treatment notes.  (Tr. 41).  According to the Commissioner, in particular, the ALJ pointed out that while plaintiff had some increased symptoms while grieving, she did not meet the criteria for inpatient psychiatric treatment.  (Tr. 40-41).  The Commissioner states that while this is not the sole reason the ALJ relied upon, it is indicative that

plaintiff's symptoms were not as severe as those reflected in Dr. Yoon's opinion. The Commissioner continues that, in addition, plaintiff's treatment records fail to support Dr. Yoon's opinion.  During plaintiff's intake evaluation in October 2010, doctors noted that she was oriented and exercised good judgment.  (Tr. 316).  She was able to repeat four out of four objects and recall them five minutes later.  (Tr. 317).  She was able to do her serial 3's "indicating good concentration" and she "abstracted well on proverbs and similarities."  (Tr. 317).  The Commissioner further asserts that during her subsequent medication reviews, plaintiff displayed normal results on mental status examinations, and that despite evidence of depression, her judgment, attention, concentration, orientation, and speech were within normal limits.  (Tr. 322-23).  In early November 2010, Dr. Yoon noted that plaintiff's condition was improving with medication (Tr. 325), and by late November, doctors noted that plaintiff's symptoms were stable.  (Tr. 334).  In January 2011, plaintiff reported that her sister had died on January 4, but she still exhibited normal findings during her examination and doctors noted that her condition was still improving.  (Tr. 337-41, 345).  The Commissioner continues that the following month, plaintiff noted that her treatment had improved her condition, but admitted that she was upset over the

death of her sister and cried easily.  (Tr. 345).  The Commissioner contends that plaintiff's mental status examination results were largely normal and her doctors

18

recommended that she continue taking her medications. (Tr. 346-50). In May 2011, plaintiff reported that her nephew had died of a heroin overdose, but despite her grief, she continued to display normal results on her mental status examinations. (Tr. 358-59, 362). The Commissioner states that although plaintiff dealt with difficult losses and grief during the period at issue, her treatment notes show that she consistently retained good memory, judgment, and thought processes. The Commissioner further argues that the record fails to show that plaintiff had significantly diminished mental capacities or that doctors ever placed restrictions on her ability to function. Plaintiff's treatment record also shows that she controlled her symptoms while on medication and she testified that her medication helped with her crying spells. (Tr. 61-63). The Commissioner contends that these records do not address or otherwise show that plaintiff had marked limitations in concentration, attention, social interaction, or adaptation, as reflected in Dr. Yoon's opinion. The Commissioner asserts that plaintiff broadly concludes that Dr. Yoon's opinion was supported by referencing appropriate medical findings. The Commissioner argues, however, that it is unclear what "medical findings" plaintiff is referring to as Dr. Yoon's opinion simply lists plaintiff's diagnoses and symptoms of sleep and mood disturbance, emotional lability, panic attacks, and difficulty thinking. (Tr. 447-48). *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says

nothing about the severity of the condition."). According to the Commissioner, Dr. Yoon provides no discussion as to why plaintiff's diagnosis or symptoms would manifest themselves as severe functional limitations. Moreover, Dr. Yoon's notation that plaintiff had difficulty thinking is inconsistent with treatment notes that fail to document such difficulties. The Commissioner states that the ALJ also pointed out that Dr. Yoon's highly restrictive opinion was inconsistent with the Global Assessment of Functioning (GAF) scores plaintiff received. (Tr. 41). The ALJ noted that the preponderance of the GAF scores in the record above 50 supports a reasonable inference that the plaintiff experienced only moderate difficulties in functioning. (Tr. 41). The Commissioner further contends that, indeed, on the same day that Dr. Yoon rendered his opinion, he also assigned plaintiff a GAF score of 59, reflecting moderate limitations and just below the range for mild limitations. (Tr. 47). The Commissioner argues that Dr. Yoon does not explain this discrepancy or otherwise cite to any evidence that would support his opinion. The Commissioner contends that although plaintiff argues that it was improper for the ALJ to discuss plaintiff's GAF scores, she has not cited any authority that entirely bars an ALJ from considering GAF scores. Moreover, the Commissioner continues, plaintiff's argument misses the point. The Commissioner argues that even if the ALJ was not required to put weight into GAF scores, it still does not explain why Dr. Yoon's opinion and the GAF scores he

assigned were inconsistent. The Commissioner concludes that, based on those deficiencies, the ALJ reasonably gave Dr. Yoon's opinion less than controlling weight.

The Commissioner further argues that plaintiff contends that the ALJ's RFC finding was deficient because he did not rely on any particular medical opinion after discounting the opinions of both Drs. Yoon and Herringshaw. The Commissioner contends, however, that the regulations do not require the ALJ to adopt a medical source opinion in making that determination. *See* 20 C.F.R. § 404.1546(c). In fact, the regulations expressly state that the "residual functional capacity [is] based on all of the relevant medical and other evidence," rather than simply a medical opinion. 20 C.F.R. § 404.1545(a)(3). The Sixth Circuit has recognized that under the regulations, "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [his] residual functional capacity.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). The Commissioner states that, indeed, Social Security Ruling (SSR) 96-5p distinguishes between a medical opinion and RFC assessment. "Even though the adjudicator's RFC assessment may adopt the opinions in a medical source statement, they are not the same thing: A medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an

21

RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)."  SSR 96-5p, 1996 WL 374183, at *4. Notably, an ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding. *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 439 (6th Cir. 2010).  The Commissioner states that other courts have rejected the position that an ALJ is unqualified to determine a claimant's RFC without the support of a medical opinion.  *See, e.g.*, *Ford v. Comm'r of Soc. Sec.*, 114 Fed. Appx. 194 (6th Cir. 2004); *Poe*, 2009 WL 2514058, at *7; *see also Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (finding "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question"); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 360 (3d Cir. 2011) (stating that "the ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision.").

The Commissioner asserts that the position advanced by plaintiff is similar to the one endorsed by the Northern District of Ohio in *Deskin v. Commissioner of Social Security*, 605 F. Supp.2d 908, 912 (N.D. Ohio 2008), where the court found that "an ALJ's determination of RFC without a medical advisor's assessment is not

supported by substantial evidence."  The Commissioner argues, however, that the

Northern District of Ohio has since questioned this approach.  Specifically, in

*Henderson v. Comm'r of Soc. Sec.*, 2010 WL 750222 (N.D. Ohio Mar. 2, 2010),

the court found that "*Deskin* . . . is not representative of the law established by the

legislature, and interpreted by the Sixth Circuit Court of Appeals."  *Id.* at *2.

Accordingly, the *Henderson* court found that the ALJ committed no error by

determining the claimant's RFC after having discounted the opinions of the various

medical sources.  *Id.*  The Commissioner concludes that the record reflects that the

ALJ reasonably evaluated the evidence prior to determining plaintiff's functional

capacity.  Specifically, the ALJ reasonably accounted for plaintiff's mental

difficulties by imposing workplace restrictions that addressed her complaints, and

the ALJ's finding is consistent with the regulations as well as Sixth Circuit and

Eastern District of Michigan case law.  Accordingly, the Commissioner concludes,

the ALJ's decision should not be disturbed.

The Commissioner argues that the ALJ also properly evaluated plaintiff's

credibility.  According to the Commissioner, plaintiff argues that the ALJ's

credibility finding was problematic because he was required to evaluate the

consistency of plaintiff's statements prior to making the RFC determination, and

that the ALJ's credibility finding was simply boilerplate.  The Commissioner

contends, however, that the simple fact that an ALJ used boilerplate language does

not automatically undermine or discredit the ALJ's ultimate conclusion if he

otherwise points to information that justifies his credibility determination.  The

Commissioner argues that, contrary to plaintiff's suggestion, this is not a case

where the ALJ provided a single-sentence boilerplate credibility assessment.

Rather, the ALJ identified where the medical and other evidence did not fully

support plaintiff's complaints, and the Commissioner asserts that the decision

reflects that the ALJ considered a wide variety of factors in assessing plaintiff's

alleged functional limitations, including her treatment and work histories; her daily

activities; and the degree to which objective medical evidence supported the

alleged severity of her impairments.  (Tr. 36-42). *See* 20 C.F.R. § 404.1529(c)

(credibility factors); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996) (same).

The Commissioner thus concludes that having given due consideration to the

regulatory factors, the ALJ reasonably concluded that although plaintiff's

impairments significantly limited her functional capacity, they did not prevent her

from working.  (Tr. 36).  The Commissioner contends that, as detailed above,

plaintiff's allegations of disabling mental limitations were unsupported by her

treatment record.  The Commissioner asserts that although plaintiff argues that her

treatment notes do not reflect that her improvement was significant or sustained,

plaintiff's doctors noted that her condition was improving in November 2010 (Tr.

325), and by late November, doctors noted that plaintiff's symptoms were stable.

(Tr. 334). The Commissioner further asserts that the record showed that plaintiff's condition remained stable through January 2011 and improved in May 2011 despite the death of her sister. (Tr. 349, 362). Significantly, the Commissioner continues, the record does not suggest that plaintiff's condition worsened after she began treatment in November 2010.

The Commissioner contends that plaintiff also objects to the ALJ's discussion of her daily activities. The Commissioner argues, however, that the regulations specifically direct an ALJ to consider a claimant's ability to perform daily activities in assessing her credibility. 20 C.F.R. § 404.1529(c)(3)(I). The ALJ noted that plaintiff reported that she could vacuum, dust, do the laundry, and cook simple meals (Tr. 41, 238-40), and plaintiff also indicated that she could go grocery shopping every two weeks for an hour. (Tr. 240). Further, at the hearing, plaintiff testified that she could perform light housekeeping. (Tr. 63-64). The Commissioner contends that the record does not indicate that plaintiff's mental impairments caused any limitation on her ability to perform her daily activities, and that plaintiff's ability to perform these activities does not support the severity of her allegations. The Commissioner thus argues that the ALJ's decision reflects that he did not reject plaintiff's statements about the intensity and persistence of her symptoms without an explanation; rather, he considered other relevant factors as required by 20 C.F.R. § 404.1529(c)(3). The Commissioner concludes that

25

while plaintiff may disagree with the ALJ's credibility assessment, she has failed to demonstrate a basis for overturning the finding, especially in light of the great weight and deference that an ALJ's credibility finding is entitled to on review. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

Finally, the Commissioner argues that the ALJ's hypothetical question accurately portrayed plaintiff's mental limitations. At the administrative hearing, the ALJ asked the vocational expert whether an individual with plaintiff's vocational background and limitations consistent with her RFC would be able to work, and, based on those assumptions, the vocational expert identified thousands of jobs that such an individual could perform. (Tr. 71-73). According to the Commissioner, plaintiff argues that the ALJ's hypothetical question did not account for her moderate deficiencies in the broad functional area of concentration, persistence, and pace. The Commissioner counters that, as noted above, the ALJ found that, despite plaintiff's moderate limitations, she could perform simple, repetitive tasks that required little judgment and could be learned in a short period of time, and that plaintiff could have no interaction with the public and only occasional interaction with coworkers. (Tr. 36). The Commissioner argues that "[t]here is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled work' but excludes a moderate limitation in concentration. Rather, this Court must look at the record as a whole and determine

if substantial evidence supports the ALJ's decision." *Taylor v. Comm'r of Soc. Sec.*, 2011 WL 2682682 at * 7 (E.D. Mich. May 17, 2011), *adopted by* 2011 WL 2682892 (E.D. Mich. July 11, 2011).  The Commissioner further contends that "numerous courts have found similar hypotheticals adequately account for moderate limitations in [concentration, persistence and pace]." *E.g.*, *Johnson v. Comm'r of Soc. Sec.*, 2013 WL 1187031, at *5 (E.D. Mich. Mar. 21, 2013) (collecting cases).  The Commissioner argues that, as discussed above, the ALJ's assessment of plaintiff's mental capacity was supported by substantial evidence and the hypothetical question properly accounted for her moderate limitations in concentration, persistence, or pace.  The Commissioner concludes, accordingly, the ALJ's hypothetical question was not flawed and that this Court should affirm the decision of the Commissioner.

### D.    Plaintiff's Reply Brief

Plaintiff argues that contrary to the Commissioner's assertion that the ALJ appropriately weighed the medical evidence and determined plaintiff's residual functional capacity, and that the ALJ did not give "any weight" to the opinions from Dr. Herringshaw, the ALJ in fact gave this opinion "some weight."  (Tr. 39). While the ALJ disparaged Dr. Herringshaw's opinion as based "solely" on plaintiff's subjective complaints without any corroboration by other evidence provided to the doctor, plaintiff contends his criticisms are unwarranted.  Dr.

27

Herringshaw's mental status examination revealed that plaintiff had low self-esteem, an anxious manner, little insight into her behavior, a history of suicidal thinking, extreme mood swings, panic attacks, somatic complaints, decreased sleep, loss of appetite, a depressed appearance, and tearfulness on and off throughout the evaluation.  (Tr. 307).  Plaintiff asserts that these are the types of diagnostic signs and symptoms that are expected when dealing with mental conditions.  *See* 20 C.F.R. §§ 404.1528, 416.928 (identifying observable psychiatric abnormalities as acceptable clinical and diagnostic techniques).  In this context, the Sixth Circuit recognized in *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989), that "when mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology.  The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques."  Plaintiff further argues that she cannot be faulted for the Administration's failure to provide Dr. Herringshaw with corroborating information on her psychiatric conditions, as it was incumbent upon the Commissioner to provide this information to the consultant.  20 C.F.R. §§ 404.1517, 416.917 (stating "[w]e will [] give the examiner any necessary background information about your condition.").  Plaintiff continues that the

Commissioner fails to point out how the treatment record contradicts Dr.

Herringshaw's opinions because plaintiff's treating psychiatrist agreed that

plaintiff suffers from numerous psychiatric limitations (Tr. 450-54), which the

vocational expert testified would preclude her from working.  (Tr. 73).  Therefore,

plaintiff concludes, the ALJ failed to adequately consider the opinions provided by

the government's own examining psychologist, Dr. Herringshaw.  *See also*

*Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (Posner, J.) (it is

"implausible" to believe that a physician retained by and paid for by the

Administration would sympathize with a Social Security claimant unless the

individual was truly disabled).

Plaintiff next argues that the Commissioner incorrectly contends that the

ALJ rejected the opinions from treating psychiatrist, Dr. Yoon, as inconsistent with

the treatment records.  Plaintiff notes that the Commissioner cites to some

instances of normal findings on mental status examinations, but contends that the

ALJ did not cite to these specific findings; he simply made a broad statement that

the records did not show sufficient findings.  (Tr. 41).  Plaintiff argues that the

denial of benefits cannot be based on findings cited by Defendant's counsel that

were not specified by the ALJ.  *See Johnson v. Sec'y of Health & Human Servs.*,

794 F.2d 1106, 1113 (6th Cir. 1986) (Court cannot make *post-hoc* rationalizations

for denial of benefits by the Agency).  Plaintiff asserts that it is the duty of the

Court to determine if the ALJ's findings are supported by substantial evidence and based on a correct application of the law, not to weigh the evidence in the first instance, as urged by the Commissioner here.  *See Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472 (6th Cir. 1982) ("Our task is not to reweigh the evidence. That is solely the province of the Secretary").  Plaintiff continues that, regardless, mental status findings in the medical records document extensive abnormalities, including a depressed mood, a constricted/labile affect, rapid and soft speech, sadness, feelings of sadness, hopelessness, and worthlessness, suicidal thoughts, anxiety and panic attacks on a daily basis, and feelings that people are judging plaintiff and wanting to do things to her.  (Tr. 316, 322, 346, 367, 375).  Plaintiff contends that these are consistent with the findings cited by Dr. Yoon as supporting the limitations described for plaintiff.  (Tr. 448-49).

Plaintiff also argues that the Commissioner also makes a rather surprising statement that the "record fails to show that Plaintiff had significantly diminished mental capacities or that doctors ever placed restrictions on her ability to function." However, plaintiff contends, Dr. Yoon found that plaintiff had significant restrictions in mental functioning.  (Tr. 450-54).  Plaintiff asserts that to the extent the Commissioner is suggesting that these limitations are not recorded in any of the progress notes, it is well-known that medical charts are not kept in anticipation of litigation or for recording specific functional limitations, but instead for the

purposes of noting a patient's symptoms, diagnoses, and treatment recommendations, as was the case here.  *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 356 (3d Cir. 2008) ("this Court has admonished ALJs who have used such reasoning, noting the distinction between a doctor's notes for purposes of treatment and that doctor's ultimate opinion on the claimant's ability to work"); *Leckenby v. Astrue*, 487 F.3d 626, 633 n. 7 (8th Cir. 2007) ("it does not seem unusual that a physician would see no need to make specific treatment notes on an unemployed patient's need for [specific limitations] during a routine medical examination"); *Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007) ("[t]he primary function of medical records is to promote communication and recordkeeping for health care personnel–not to provide evidence for disability determinations"). Plaintiff concludes that the decision of the Commissioner therefore should be reversed and remanded for an award of benefits, or, alternatively reversed and remanded for a new hearing.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may

33

proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of*

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either

the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed. Appx. 521, 526 (6th Cir. 2006).

## B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

36

without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### C. Analysis and Conclusions

#### 1. The ALJ failed to follow the treating physician rule[3]

Plaintiff contends that the ALJ improperly gave only "some weight" to the opinions of plaintiff's treating psychiatrist, Dr. Yoon, and thus the ALJ's RFC determination and Step Three analysis were erroneous. Plaintiff argues that the ALJ failed to follow the treating physician rule and that Dr. Yoon's opinion should be afforded controlling weight. Plaintiff asserts that Dr. Yoon opined that plaintiff

---

[3] Plaintiff does not contest the ALJ's findings with respect to her physical impairments. Accordingly, this report and recommendation will focus on plaintiff's mental impairments.

has marked limitations in the majority of mental functions requiring concentration, persistence, or pace and social functioning, and the ALJ was not permitted to simply ignore these findings. The Commissioner responds that the ALJ reasonably gave Dr. Yoon's opinion less than controlling weight.

As both parties acknowledge, and as the Sixth Circuit recently re-emphasized, greater deference is generally given to the opinions of treating medical sources than to the opinions of non-treating medical sources. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir.2007). The opinion of a treating physician is the subject of a special rule: such an opinion must be given controlling weight if it is well-supported and not inconsistent with the record, and even if it is not given controlling weight, it is subject to a rebuttable presumption of deference. 20 C.F.R. §§ 404.1527(c), 4.927(c). "Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Rogers*, 486 F.3d at 406 (citing § 404.1527(d)(2)). Indeed, SSR 82-62 requires that "[t]he explanation of the decision must describe the weight attributed the pertinent medical and non-medical factors in the case and reconcile any significant inconsistencies. Reasonable inferences may be drawn, but presumptions, speculations and suppositions must

not be used." As a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-56 (6th Cir. 2004) (finding the ALJ's failure to make sufficiently clear why he rejected the treating physician's opinion was not harmless error, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion). Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions he makes." *Bailey v. Comm'r of Soc. Sec.*, 173 F.3d 428, 1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999).

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the medical opinion is determined by a set of factors that guides the weight given to the medical opinion, including the treatment relationship, supportability, consistency, specialization, and other factors. *See* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Martin v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 369, 372 (6th Cir. 2006).

Dr. Yoon, plaintiff's treating psychiatrist, began treating plaintiff in October 2010. In October 2010, Dr. Yoon noted that plaintiff was able to repeat four out of

39

four objects and able to recall them five minutes later, was able to do serial 3's "indicating good concentration," and she abstracted well on proverbs and similarities, but noted also that plaintiff reported symptoms of depression, feeling sad, hopeless, worthless with low energy and motivation, problems sleeping, getting anxious with panic attacks, feeling very anxious while being around people, and feeling that people are judging here, talking about her, or wanting to do things to her. (Tr. 40, 312-17). Dr. Yoon diagnosed plaintiff with major depressive disorder, recurrent, in partial remission, and panic disorder with agoraphobia, with a GAF score of 59. (Tr. 317). Dr. Yoon noted at a follow-up examination in February 2011 that plaintiff reported that she cries all the time and sleeps, and also noted that plaintiff had a labile affect and cries easily. (Tr. 345-46, 390). In April 2011, plaintiff reported periodic difficulty with concentration and short-term memory and racing thoughts related to losses, rated her depression as 10 on a 10 point scale, with symptoms including crying frequently, difficulty falling asleep, frequent feelings of overwhelming sadness around the death of her sister, fatigue, poor appetite, and symptoms of anxiety when around crowds of people. (Tr. 352). It was noted that plaintiff has had panic disorder with agoraphobia for much of her adult life, which has been worse over the last few months. (Tr. 354). Plaintiff was seen on a "crisis basis" in May 2011 after her nephew died of a heroin overdose, and the doctor noted she was "crying all the time" and that her mood was

dysphoric and depressed.  (Tr. 366-67).  In August 2011, plaintiff was noted to be still crying, but keeping herself busy, she was verbally talkative but goal directed, and she reported that her anxiety was okay with medication.  (Tr. 439).

Dr. Yoon completed a Psychiatric/Psychological Impairment Questionnaire on plaintiff in August 2011, noting that plaintiff was diagnosed with adjustment disorder with depressed mood, panic disorder with agoraphobia, and borderline personality disorder, assigned a GAF score of 59, and given a "fair" prognosis. (Tr. 447).  Dr. Yoon listed plaintiff's primary symptoms as depression, tearfulness and a sad mood, and noted the following positive clinical findings: sleep disturbance, mood disturbance, emotional lability, recurrent panic attacks, and difficulty thinking or concentrating.  (Tr. 448-49).  Dr. Yoon opined that plaintiff was markedly limited in the following mental activities: the ability to remember locations and work-like procedures; the ability to understand and remember one or two step instructions; the ability to understand and remember detailed instructions; the ability to carry out simple one or two-step instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to sustain ordinary routine without supervision; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an

unreasonable number and length of rest periods; the ability to interact appropriately

with the general public; the ability to accept instructions and respond appropriately

to criticism from supervisors; the ability to get along with co-workers or peers

without distracting them or exhibiting behavioral extremes; the ability to maintain

socially appropriate behavior and to adhere to basic standards of neatness and

cleanliness; the ability to be aware of normal hazards and take appropriate

precautions; the ability to travel to unfamiliar places or use public transportation;

and the ability to set realistic goals or make plans independently.  (Tr. 450-52).  Dr.

Yoon opined that plaintiff experiences episodes of deterioration or decompensation

in work or work-like settings because she experiences "periods of grieving and

tearfulness followed by lack of focus" and also "experiences extreme anxiety."

(Tr. 452).  Dr. Yoon noted that plaintiff was prescribed four medications: Desryl,

Celexa, Neurontin and Xanax, and opined that plaintiff was incapable of even "low

stress" work and that she is likely to be absent from work more than three times a

month as a result of her impairments.  (Tr. 452-54).

  The ALJ's analysis of Dr. Yoon's opinions is as follows:

> The undersigned gives some weight to the opinion of the
> treating psychiatrist since it was not consistent with the
> claimant's treatment notes at Community Network
> Services (Exhibit 5F; 6F; 7F).  Although, the claimant
> had some increased symptoms when she was grieving,
> she did not meet the criteria for inpatient treatment.  The
> assessment from Dr. Yoon indicated that she was only
> moderately limited in her ability to function with a GAF

score of 59 (Exhibit 7F).

(Tr. 41).  This perfunctory analysis wholly fails to satisfy the ALJ's obligation to state the weight he is giving to the treating physician opinion or to give good reasons for not giving controlling weight to the opinion.  As the Sixth Circuit stated:

> This requirement is not simply a formality; it is to safeguard the claimant's procedural rights.  It is intended "to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [] he is not.  Significantly, the requirement safeguards a reviewing court's time, as it "permits meaningful" and efficient "review of the ALJ's application of the [treating physician] rule."

*Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (internal citations omitted).

The ALJ here fails to explain how the treatment record contradicts Dr. Yoon's opinion or otherwise cite to any specific findings in support of this determination.  In fact, contrary to the ALJ's bare assertion, while plaintiff reported at times that her medications were helping to control her symptoms, as noted above, Dr. Yoon also noted over the course of plaintiff's examinations that plaintiff had increased symptoms of depression, sadness, and panic attacks, she felt that people were judging her, talking about her or wanting to do things to her, she cries all the time and sleeps, she had increased crying episodes due to grief, she had periodic difficulty with concentration and short-term memory, she complained

of having racing thoughts and feeling overwhelming sadness, she had symptoms of anxiety when around crowds of people, and she rated her depression as 10 on a 10-point scale.  (Tr. 40, 316-17, 345-46, 352, 354, 366-67, 390).  These treatment notes are consistent with and support Dr. Yoon's "clinical findings" in his opinion of sleep disturbance, mood disturbance, emotional lability, recurrent panic attacks and difficulty thinking or concentrating (Tr. 448), yet the ALJ did not address those findings.  Thus, the undersigned finds that the ALJ's rejection of Dr. Yoon's opinion based on the bare statement that it is "not consistent with claimant's treatment notes," without any further explanation, to be inadequate to meet his burden under the treating physician rule.  *See Wilson*, 378 F.3d at 544-46; *see also Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (concluding that the treating physician's notes "must be read in context of the overall diagnostic picture he draws.  That a person who suffers from panic attacks, anxiety, and depression makes *some improvement* does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.") (emphasis added).

The undersigned recognizes that the ALJ also noted, in support of his finding that Dr. Yoon's opinions were only entitled to "some weight," that plaintiff was not hospitalized and that "[t]he assessment from Dr. Yoon indicated [plaintiff] was only moderately limited in her ability to function with a GAF score of 59."  (Tr. 41).  However, there is no evidence that a person with "marked"

44

limitations is generally expected to be hospitalized, and thus plaintiff's lack of hospitalization during this time period is not a proper basis for discrediting Dr. Yoon's opinions. *Cf. Adkins*, 2010 WL 3782388, at \*9 (plaintiff's lack of hospitalization is not a proper basis for discrediting his testimony regarding his symptoms). Plaintiff argues that the GAF scores are not equivalent to any particular level of functioning under the Commissioner's regulations and that it was improper for the ALJ to discuss these scores. While the undersigned does not agree that it was necessarily *improper* for the ALJ to discuss the scores, the undersigned suggests that the ALJ's own selective interpretation of plaintiff's GAF scores does not constitute sufficient evidence to overcome the deference owed Dr. Yoon's opinion. "[A] GAF assessment is isolated to a relatively brief period of time, rather than being significantly probative of a person's ability to perform mental work activities on a full-time basis." *White v. Colvin*, 2014 WL 2813310, at \*10 (S.D. Ohio June 23, 2014), *adopted by* 2014 WL 3510298 (S.D. Ohio July 14, 2014). Dr. Yoon based his opinions on a variety of factors and his treatment history of plaintiff, not just those factors that go into his assignment of the GAF score on a particular date, and the ALJ does not give any specific reason supporting his conclusion that a GAF score of 59 is inconsistent with Dr. Yoon's assessment. Indeed, no medical expert opined that the GAF scores provided a basis for discrediting the opinion of the treating physician. *See Martin v. Comm'r*

45

*of Soc. Sec. Admin.*, 61 Fed. Appx. 191, 200-01 (6th Cir. 2003) ("In the absence of

a medical opinion refuting or discrediting the treating physician, whose opinions

are supported by other medical reports of record, the ALJ's own view of the GAF

scores and Plaintiff's activity log do not constitute substantial evidence to

overcome the deference owed to the conclusion of [the treating physician]."),

*clarified on other grounds*, 82 Fed. Appx. 453 (6th Cir. 2003).  The ALJ here

improperly undertook his own analysis of plaintiff's treatment records and

provided his own lay medical opinion about plaintiff's behavior, and he has failed

to give adequate reasons for the weight he gave Dr. Yoon's opinions.  *See Meece v.

Barnhart*, 192 Fed. Appx. 456, 465 (6th Cir. 2006) ("the ALJ may not substitute

his own medical judgment for that of the treating physician where the opinion of

the treating physician is supported by the medical evidence"); *see also Morales v.

Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) ("In choosing to reject the treating

physician's assessment, an ALJ may not make speculative inferences from medical

reports and may reject a treating physician's opinion outright only on the basis of

contradictory medical evidence and not due to his or her own credibility

judgments, speculation or lay opinion.").

Moreover, even if the ALJ determines that plaintiff's treating physician's

opinions should not be given controlling weight despite the medical evidence in

support, "the ALJ must still determine how much weight is appropriate by

considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Commissioner of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).  This was not done either.  And, even if the opinions of plaintiff's treating physician were not entitled to controlling weight, they were entitled to deference. 20 C.F.R. § 416.927(d)(2)(I).  As explained in SSR 96-2p:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188 (July 2, 1996).  The ALJ here failed to adequately address why Dr. Yoon's opinions should not be given controlling weight or even deference, as required by the regulations.  20 C.F.R. § 416.927(d)(2).  Indeed, Dr. Yoon's opinion has not been contradicted and thus is entitled to complete deference.  *See Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992).  Dr. Yoon's opinions are consistent with the only other medical opinion of record–that of the consultative examining psychologist, Dr.

47

Herringshaw, who opined that plaintiff was "unable to sustain appropriate

emotional stability to sustain full time or part time employment." (Tr. 309). Thus,

the undersigned concludes that a remand is necessary so the ALJ may re-evaluate

the treating physician opinions and all supporting treating evidence.

Plaintiff also challenges the ALJ's assessment of the opinions of the

consultative examining psychologist, Dr. Herringshaw, arguing that the ALJ's RFC

determination is not consistent with Dr. Herringshaw's opinion that plaintiff was

"unable to sustain appropriate emotional stability to sustain full time or part time

employment." It is well-settled that a one-time consulting examiner need not be

assigned controlling weight under the regulations. *See* 20 C.F.R. § 416.927(d)(2);

*Rahrig v. Comm'r of Soc. Sec.*, 2013 WL 3947155, at *12 n.18 (N.D. Ohio Aug. 1,

2013) ("Opinions from medical professionals who have only examined the

claimant on one occasion are not automatically entitled to any special degree of

deference."). Although not entitled to controlling weight, when an ALJ evaluates a

medical opinion such as that of a consultative examining physician, he is to

consider relevant factors such as the examining relationship, treatment relationship,

length of relationship and frequency of the examination, nature and extent of the

treatment relationship, supportability of the opinion, consistency of the opinion

with the record as a whole, specialization, and other factors. 20 C.F.R. §

416.927(c). The regulations provide that the "more consistent an opinion is with

the record as a whole, the more weight we will give to that opinion." 20 C.F.R. §

416.927(c)(4). The regulations further provide that the "more a medical source

presents relevant evidence to support an opinion, particularly medical signs and

laboratory findings, the more weight we will give that opinion." *Id.* §

416.927(c)(3). The ALJ discredited Dr. Herringshaw's report in part because it

was based solely on plaintiff's statements at the examination. (Tr. 39). However,

this analysis has been previously criticized by the Sixth Circuit in *Blankenship v.*

*Bowen*, 874 F.2d 1116 (6th Cir. 1989), where the court explained:

> In general, mental disorders cannot be ascertained and
> verified as are most physical illnesses, for the mind
> cannot be probed by mechanical devices [sic] in order to
> obtain clinical manifestations of medical illness....
> [W]hen mental illness is the basis of a disability claim,
> clinical and laboratory data may consist of the diagnosis
> and observations of professionals trained in the field of
> psychopathology. The report of a psychiatrist should not
> be rejected simply because of the relative imprecision of
> the psychiatric methodology or the absence of substantial
> documentation, unless there are other reasons to question
> the diagnostic techniques.

*Id.* at 1121 (citing *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987)). Dr.

Herringshaw found in her mental status examination of plaintiff that plaintiff had

an anxious manner but was friendly and personable, she had little insight into her

behavior and how to cope with her symptoms, she cried on and off throughout the

evaluation, she had adequate recall but could not remember that Obama is our

president, and that she stated she was depressed, had daily panic attacks, and

reported a long history of suicidal thinking and many suicide attempts.  (Tr. 306-08).  Dr. Herringshaw diagnosed plaintiff with Bipolar I Disorder-Most recent episode mixed, Panic Disorder without Agoraphobia, and Somatization Disorder, with a GAF score of 45.  (Tr. 308-09).  Although the ALJ faulted Dr. Herringshaw's opinion as based on plaintiff's statements rather than treatment records (Tr. 39), he failed to explain how the treatment record contradicts Dr. Herringshaw's opinions.  Indeed, as explained above, plaintiff's treating physician similarly opined that plaintiff suffers from numerous psychiatric limitations.  (Tr. 450-54).  Accordingly, the undersigned suggest that the ALJ's evaluation of Dr. Herringshaw's opinion is not supported by substantial evidence and should be re-evaluated pursuant to 20 C.F.R. § 416.927(c).

As to the remaining justifications offered by the Commissioner in support of her argument that the ALJ properly evaluated Dr. Yoon's and Dr. Herringshaw's opinions, the undersigned notes that "the courts may not accept appellate counsel's post hoc rationalizations for agency action.  It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Berryhill v. Shalala*, 4 F.3d 993, 1993 WL 361792, at *6 (6th Cir. Sept. 16, 1993) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983)).  "Courts are not at liberty to speculate on the basis of an administrative agency's order. . . .  The court is not free to accept 'appellate counsel's post hoc

50

rationalization for agency action in lieu of reasons and findings enunciated by the Board.'" *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991). Thus, the Commissioner's post hoc rationalization is not an acceptable substitute for the ALJ's lack of rationale concerning her treatment of the opinions of plaintiff's treating physician and the consulting examining physician.

Although the ALJ's finding that plaintiff was not disabled ultimately may be justified, if an ALJ fails to explain why he rejected or discounted the opinions of the claimant's treating physician, and how those reasons affected the weight accorded the opinions, the Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (citation omitted); *see also Cole*, 661 F.3d at 939 ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided "good reasons" for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.'") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)). Because the ALJ did not provide valid reasons for rejecting Dr. Yoon's and Dr. Herringshaw's opinions, this objection renders erroneous both the RFC determination and the Step Three analysis, as both arose from that improper rejection. Thus, the ALJ's basis for

concluding that plaintiff does not have an impairment or combination of

impairments that met or medically equal the criteria of Listing 12.04 at Step Three

of the analysis, as well as the ALJ's RFC determination, is not supported by

substantial evidence.  This matter should be remanded for the ALJ to further

explain the weight given plaintiff's treating physician's opinion and the opinions

offered by the consulting examining physician.[4]

---

[4] The undersigned notes that a related problem in this case is the lack of any other medical opinion regarding plaintiff's functional limitations, as no other treating physician (other than Dr. Yoon) or reviewing or examining physician (other than Dr. Herringshaw) offered any other opinions regarding plaintiff's functional limitations.  Thus, the Court is left with the circumstance of the ALJ interpreting raw medical data to arrive at a residual functional capacity determination, without the benefit of an expert medical opinion.  Importantly, in weighing the medical evidence, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).  Accordingly, "an ALJ may not substitute his [or her] own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Id.* (internal quotations omitted).  In other words, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio June 9, 2011), *adopted by* 2011 WL 3566009 (S.D. Ohio Aug. 12, 2011).  Yet that is precisely what the ALJ did in this case.

The undersigned recognizes that the final responsibility for deciding the RFC "is reserved to the Commissioner."  20 C.F.R. § 416.927(d).  Nevertheless, courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data.  *See, e.g., Wyatt v. Comm'r of Soc. Sec.*, 2013 WL 4483074, at *16 (E.D. Mich. Aug. 19, 2007) ("ALJ RFC determinations must be supported by medical opinions.") (citation omitted).  The undersigned recognizes that there are limited occasions when the medical evidence is so clear, and so undisputed, that an ALJ would be justified in drawing functional capacity conclusions from such evidence without the assistance of a medical source.  *Mitsoff v. Comm'r of Soc. Sec.*, 2013 WL 1098188, at *9 (S.D. Ohio Mar. 15, 2013) (citation omitted).  This does not appear to be such a case, particularly where the plaintiff was suffering from well-documented emotional impairments.  Under these circumstances, an expert medical advisor is necessary to properly evaluate plaintiff's impairments, symptoms and functional limitations.

**2.    Because the ALJ erred at Step Three and in his RFC analysis, the undersigned need not address plaintiff's other arguments**

As noted above, plaintiff also suggests that the ALJ committed other errors, namely, failing to properly evaluate plaintiff's credibility and relying on flawed vocational expert testimony at steps four and five.  However, the undersigned need not address these alleged errors.  The nature of the remanded order will likely impact the ALJ's sequential analysis from step three through step five.  The ALJ's credibility determination turned in part on the medical evidence of record and the ALJ's assessment of how strongly opinions of medical experts corroborated plaintiff's claimed degree of limitation.  Given that the treating physician's opinions will have to be re-assessed and possibly the opinion of an additional medical advisor obtained for a redetermination of plaintiff's RFC, plaintiff's credibility will necessarily have to be re-assessed on remand, and the ALJ's Step Four and Five findings will need to be re-evaluated.  Thus, because the remaining claims of error derive, at least in part, from the errors addressed above, the undersigned need not make a determination regarding the alleged errors here.  *See McKnight v. Comm'r of Soc. Sec.*, 2012 WL 3966337, at *13 (E.D. Mich. Sept. 10, 2012) (the ALJ's failure to properly evaluate plaintiff's treating physicians' opinions rendered Steps Three, Four and Five unsupported by substantial evidence).

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision 'with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Here, a judicial award of benefits is unwarranted because the record does not show that "proof of disability is overwhelming or proof of disability is strong and evidence to the contrary is lacking," as required for a judicial award of benefits in the Sixth Circuit. *Id.* Although ultimately a finding of no disability at either step four or five of the sequential evaluation may be appropriate in this case, substantial evidence does not exist on the record to support the current RFC determination. The only functional limitations in the record are those found in Dr. Yoon's and Dr. Herringshaw's opinions, which the ALJ did not adopt. Thus, the ALJ's RFC determination was not based on any medical opinion but was apparently formulated based on the ALJ's own independent interpretation of the medical data of record. Under these circumstances, the ALJ's RFC lacks support and remand is necessary because the ALJ improperly relied on this determination to conclude that plaintiff can perform a number of jobs in the national economy. *See Isaacs v. Astrue*, 2009 WL

54

3672060, at *11 (S.D. Ohio Nov. 4, 2009) (remanding matter for further proceedings where ALJ rendered her RFC finding for medium work without reference to any medically determined RFC opinion bridging the raw medical data to specific functional limitations).

## IV.  RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** under Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 24, 2014                          s/Michael Hluchaniuk
                                             Michael Hluchaniuk
                                             United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on July 24, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the parties of record.

                                             s/A. Chubb for Tammy Hallwood
                                             Case Manager
                                             (810) 341-7887
                                             tammy_hallwood@mied.uscourts.gov

56